# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DENNIS L. ADKINS,                          :
                                           :
                Petitioner,                :
                                           :
        v.                                 :        NO. 3:07CV660(MRK)
                                           :
WARDEN,                                    :
                                           :
                Respondent.                :

## MEMORANDUM OF DECISION

Currently pending before the Court is Dennis Adkins's Application for a Writ of Habeas Corpus under 28 U.S.C. § 2254. *See* Application for a Writ of Habeas Corpus [doc. # 1]. Mr. Adkins pled guilty in state court under the *Alford* doctrine to a charge of felony murder in April 2000 and he was sentenced to thirty-five years' imprisonment. He filed this habeas corpus action in April 2007, approximately seven years after his state conviction became final. After the Court appointed counsel to represent Mr. Adkins on his application for federal habeas relief, Mr. Adkins filed an Amended Application for a Writ of Habeas Corpus [doc. # 23]. In response to the Court's Order to Show Cause [doc. # 24] why the relief sought should not be granted, Respondent filed a Motion to Dismiss [doc. # 27] arguing that Mr. Adkins's application for federal habeas relief was barred by the one-year limitations period set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244).

On May 30, 2008, the Court denied without prejudice to renewal Respondent's Motion to Dismiss [doc. # 27] in order to allow the parties to engage in discovery regarding Mr. Adkins's claims, to develop the factual record, and to provide Mr. Adkins with time to retain a psychiatric

expert, all of which would enable the Court to hold a meaningful evidentiary hearing on whether Mr. Adkins's application should be dismissed as time-barred. On August 12, 2008, Respondent filed a Renewed Motion to Dismiss [doc. # 54], again asserting that Mr. Adkins's federal habeas application was untimely. Although Mr. Adkins acknowledged that federal habeas review would have otherwise been time-barred as of June 15, 2001, he responded that his application for habeas relief was timely because of equitable and statutory tolling of the one-year limitations period. On October 31, 2008 and November 4, 2008, the Court held an evidentiary hearing at which Mr. Adkins, his psychiatric expert, and a prison official testified. Following the conclusion of the evidentiary hearing, the Court held oral argument to further clarify and address the parties' arguments.

The Court understands full well that Mr. Adkins would like the Court to consider the merits of his arguments regarding the validity of his state conviction – which claims that he is innocent of the murder for which he was convicted and that he was ineffectively represented in state court. And, indeed, it may be easier to turn to the merits of Mr. Adkins's claims than to resolve the complex tolling issues raised by Respondent's motion to dismiss. But Congress enacted AEDPA, and its one-year limitations period, to bring finality to state court proceedings. *See Duncan v. Walker*, 533 U.S. 143, 179 (2001). As a consequence, the Court cannot skip over the delay in the filing of Mr. Adkins's application and get right to the merits of his claims. Instead, the Court must consider at the outset whether his petition is timely under AEDPA. Mr. Adkins's burden on that issue is an especially difficult one since he must convince the Court that a total of 2,167 days are subject to statutory or equitable tolling. Both appointed counsel for Mr. Adkins as well as counsel for Respondent have cooperated and done fine work in assembling a full record, stipulating to relevant facts, and briefing the often thorny issue of tolling under AEDPA. The Court is grateful to them.

For the reasons that follow, the Court concludes that the Amended Application for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [doc. # 23] is time-barred under AEDPA. Though Mr. Adkins has made strong arguments for tolling *some* of the 2,167 days that he must account for, he has failed to convince the Court to toll *all* of the 2,167 days necessary to make his application for federal habeas relief timely. Therefore, the Court GRANTS Respondent's Renewed Motion to Dismiss [doc. # 54].

## I.

The Court will set forth additional details about the relevant facts and testimony in its discussion of the three time periods that Mr. Adkins must bridge in order to demonstrate that his application is timely. However, as an introduction, the Court provides a brief overview of the procedural history of Mr. Adkins's case, as well as his placements within the Connecticut Department of Correction ("DOC").

**Procedural Overview.** The relevant facts and procedural history are largely undisputed. *See* Joint Stipulation of Facts [doc. # 64].[1] On September 24, 1999, Mr. Adkins was charged with felony murder, first-degree robbery, conspiracy to commit first-degree robbery, criminal attempt to commit first-degree robbery, criminal use of a firearm, and criminal possession of a pistol or revolver, all in violation of Connecticut law. Since that time, Mr. Adkins has been in the exclusive custody and control of the Connecticut DOC. Shortly after Mr. Adkins was charged, Frances Mandanici, a Public Defender, was appointed to represent Mr. Adkins, and Mr. Mandanici

---

[1] After filing their respective briefs, the parties entered into a Joint Stipulation of Facts [doc. # 64]. For purposes of this Ruling, the Court has used the dates from the Joint Stipulation of Facts. As a result, the number of days for which the Court concludes Mr. Adkins seeks tolling differs somewhat from the calculations set forth in Mr. Adkins's Memorandum in Opposition to Respondent's Renewed Motion to Dismiss [doc. # 63].

represented Mr. Adkins for the duration of Mr. Adkins's state trial court proceedings.

The State amended its charges on November 12, 1999 to include one count each of murder, felony murder, and carrying a pistol without a permit. Dissatisfied with his counsel's representation, Mr. Adkins in January 2000 filed a complaint with the Statewide Grievance Committee regarding Mr. Mandanici.[2] Nevertheless, on April 4, 2000, Mr. Adkins appeared before Judge Roland D. Fasano of the Connecticut Superior Court and entered a plea of guilty under the *Alford* doctrine to felony murder in violation of Conn. Gen. Stat. § 53a-54c. Shortly thereafter, however, Mr. Adkins wrote to Judge Fasano asking the judge to remove Mr. Mandanici and to appoint another attorney to represent him and stating that he did not intend to plead guilty on April 4, 2000.

On May 26, 2000, Mr. Adkins appeared for sentencing and attempted to withdraw his guilty plea. However, Judge Fasano refused to allow Mr. Adkins to withdraw his plea and instead proceeded to sentence Mr. Adkins to thirty-five years' imprisonment. Mr. Adkins contends, and the parties do not dispute, that neither Judge Fasano nor Mr. Mandanici informed Mr. Adkins of his state-court appellate rights either before or at the sentencing. Mr. Adkins did not appeal his conviction and sentence, and the parties therefore agree that Mr. Adkins's state conviction became final on June 15, 2000. Absent tolling, the AEDPA one-year limitations period thus expired on June 15, 2001. *See* 28 U.S.C. § 2244(d)(1)(A).

On November 7, 2001, approximately five months after the AEDPA filing deadline passed,

---

[2] The Statewide Grievance Committee informed Mr. Adkins in letters dated June 16, 2000 and August 18, 2000 that there was insufficient evidence to support a probable cause finding of misconduct, that nothing in its review of Mr. Mandanici's actions warranted disciplinary action, and that Mr. Mandanici's representation did not breach ethical standards. *See* Am. Appl. [doc. # 23] at 4 n.1; *see also* Petr.'s Ex. 1K (letter from Gerald Dwyer, State of Connecticut Grievance Panel, to Dennis Adkins dated June 16, 2000).

Mr. Adkins filed a *pro se* petition for state habeas relief. He was appointed state habeas counsel and a state trial court received testimony and evidence on August 21, 2003 and October 6, 2003 concerning Mr. Adkins's claims of (1) ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments and (2) actual innocence. *See Adkins v. Warden*, No. CV020003561, 2003 WL 22480332 (Conn. Super. Oct. 10, 2003); Motion to Dismiss [doc. # 27] App. A. The trial court heard evidence from Mr. Adkins, Mr. Mandanici, the arresting officer, and the detective sergeant in the underlying criminal case. The trial court also reviewed the transcript of Mr. Adkins's plea and sentencing hearings, his sworn statement to the New Haven Police Department, his prison disciplinary report, and the statement of an additional individual, Jason Reese. In its decision dated October 10, 2003, the trial court discussed the merits of each of Mr. Adkins's claims before denying his petition for state habeas relief. *See id.*

Mr. Adkins timely appealed the ruling on his state habeas petition to the Connecticut Appellate Court, which dismissed his appeal on March 29, 2005 after what the court itself states was a "careful review of the record and briefs." *See Adkins v. Comm'r of Correction*, 88 Conn. App. 901 (2005); Motion to Dismiss [doc. # 27] App. B. Mr. Adkins says (and Respondent does not dispute) that he asked his court-appointed counsel to file a petition for certification to appeal to the Connecticut Supreme Court, but his counsel refused to do so and told Mr. Adkins that he would not file a petition for certification for Mr. Adkins. Nor did Mr. Adkins file a *pro se* petition for certification within the time permitted by Connecticut procedural rules.

Instead, on July 13, 2005, Mr. Adkins filed a *pro se* application for federal habeas relief under 28 U.S.C. § 2254 raising three of the same issues he had raised in his state petition. *See Adkins v. Warden*, No. 3:05-cv-1113 (SRU), 2005 WL 3543735, at *2 (D. Conn. Dec. 16, 2005);

Motion to Dismiss [doc. # 27] App. C. However, on December 16, 2005, his federal request for habeas relief was dismissed for failure to exhaust state court remedies on each of Mr. Adkins's claims. *See id.* On December 20, 2005, judgment was entered in favor of the Respondent Warden. Mr. Adkins filed a motion for reconsideration on December 22, 2005, which the district court denied on June 28, 2006.

On or about October 2, 2006 and again on November 17, 2006, Mr. Adkins mailed a *pro se* motion to file a late petition for certification to the Connecticut Supreme Court, seeking to appeal out of time the Appellate Court's decision on his state habeas petition. On January 10, 2007, the Connecticut Supreme Court granted Mr. Adkins's motion for permission to late file his petition for certification, but the court denied Mr. Adkins's petition for certification to appeal on that same day. *See Adkins v. Comm'r of Correction*, 281 Conn. 906 (2007); Motion to Dismiss [doc. # 27] App. D. Mr. Adkins filed this application for federal habeas relief on April 26, 2007, almost six years after the one-year limitations period in AEDPA expired on June 15, 2001.

**Mr. Adkins's DOC Placements.** Both before his plea and sentencing and through November 28, 2000, Mr. Adkins was held at the Northern Correctional Institution ("Northern CI"), where he was housed in a Chronic Disciplinary Unit ("CDU") that consisted of twenty-three hour lockdown conditions and a one-hour recreation period. Later in this opinion, the Court will discuss the conditions at Northern CI in greater detail. At the evidentiary hearing, Mr. Adkins testified that he was initially housed at Northern CI CDU as a result of fighting with fellow inmates. However, the Respondent's witness, MacDougall-Walker Correctional Institution M-Pod Unit Manager Scott Van Oudenhove, testified that Mr. Adkins was transferred to Northern CI CDU as a result of an assault on a DOC employee, and Mr. Adkins's disciplinary record does show an infraction for

assaulting a DOC employee shortly before his transfer to Northern CI. *See* Resp.'s Ex. 502.

On November 28, 2000, Mr. Adkins was transferred to MacDougall Correctional Institution ("MacDougall CI"), where he experienced less restrictive conditions than those at Northern CI CDU. Mr. Adkins remained at MacDougall CI until April 18, 2001, at which time he was transferred to Walker Correctional Institution ("Walker CI") CDU as a result of fighting. On August 24, 2001, Mr. Adkins was transferred back to Northern CI, where he was once again placed in administrative segregation. Mr. Adkins remained at Northern CI until January 28, 2003. The Parties agree that his subsequent placements and transfers are irrelevant to the Court's determination of whether his current application for federal habeas relief is time-barred.

## II.

A petitioner may file for federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, AEDPA imposes a one-year limitations period on an application for a writ of habeas corpus: "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As the Supreme Court has explained, "[Section] 2244(d)(1) quite plainly serves the well-recognized interest in the finality of state court judgments. . . . This provision reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas

petitioner has in which to seek federal habeas review." *Duncan*, 533 U.S. at 179 (citation omitted). AEDPA's one-year limitations period "promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000).

AEDPA provides, however, that this one-year limitations period may be statutorily tolled for, among other reasons, the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).[3] In addition, the Second Circuit has recognized that "in rare and exceptional circumstances," *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007) (citing *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)), equitable tolling is available on a "case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418 & n.8 (2005) (assuming without deciding that equitable tolling is available under AEDPA); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (holding that courts may equitably toll the statutory limitations period set forth in 28 U.S.C. § 2244(d)). Respondent argues that equitable

---

[3] AEDPA also allows for a renewed one-year limitations period in situations where the petitioner later discovers the factual predicate for his claim for federal habeas relief. *See* 28 U.S.C. § 2244(d)(1)(D). However, Mr. Adkins conceded at oral argument – as he must – that he knew of the facts supporting his ineffective assistance of counsel and due process claims even before he was sentenced in May 2000. The record is clear that Mr. Adkins began to complain about Mr. Mandanici's representation from as early as October 24, 1999, and that he actively corresponded with Judge Fasano, the Statewide Bar Counsel, the Inmates' Legal Assistance Program, and other individual attorneys with respect to Mr. Mandanici's alleged ineffective representation in the months preceding his sentencing hearing. *See* Petr.'s Exs. 1A to 1H. In addition, Mr. Adkins asserted that he was innocent before, during, and after his criminal proceedings. *See, e.g.,* Petr.'s Exs. 1A, 1F, 1G, 1I, and 1J. Thus, the timeliness of his current application for federal habeas relief is properly determined under 28 U.S.C. §§ 2244(d)(1)(A) & (d)(2).

tolling is no longer available in habeas actions after the Supreme Court's decision in *Bowles v. Russell*, --- U.S. ---, 127 S. Ct. 2360 (2007). However, the Second Circuit has specifically addressed the applicability of equitable tolling in the aftermath of *Bowles*, and has reaffirmed its earlier holdings that AEDPA's one-year statute of limitations period may be equitably tolled. *See Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). Therefore, the Court must address Mr. Adkins's equitable tolling arguments.

Mr. Adkins contends that either statutory or equitable tolling is appropriate for three distinct periods of time that span the date on which his conviction and sentence became final on June 15, 2000 and the date on which he filed this application for federal habeas relief on April 26, 2007. First, Mr. Adkins asserts that the 167-day period from June 15, 2000 to November 28, 2000 should be equitably tolled, thereby making his November 7, 2001 state habeas petition timely and effective to statutorily toll the one-year limitations period. Next, he argues that the 1,893-day period from November 7, 2001 to January 10, 2007 (when the Connecticut Supreme Court both allowed his late-filed petition for certification and then denied it) should be statutorily tolled under 28 U.S.C. § 2244(d)(2) because, he contends, his state habeas petition was pending during that entire period of time. Finally, Mr. Adkins claims that the 107-day period from January 10, 2007 to April 26, 2007 (when he filed this petition) should be equitably tolled. The Court addresses each of these arguments in turn. The Court will address each of these time periods, even though the Court's rejection of any one request for tolling is sufficient to find Mr. Adkins's petition untimely.

### A. Equitable Tolling: June 15, 2000 to November 7, 2001

As to this initial period, Mr. Adkins argues that the 167 days immediately following June 15, 2000, the date on which his conviction and sentence became final upon the expiration of the time

to seek direct review, should be equitably tolled. Mr. Adkins invokes equitable tolling for multiple reasons: (1) his pre-sentencing placement in Northern CI CDU through November 28, 2000 involved 23-hour lockdown conditions without access to legal materials and with only limited social interaction with a single cell mate; (2) his lack of a general education and need for special education services before dropping out of high school in the 9th grade; and (3) his lack of notice from either the trial judge or his trial counsel regarding his appellate rights.[4] Mr. Adkins also argues that his emotional trauma is a basis for equitable tolling. *See* Memorandum in Opposition to Respondent's Motion to Dismiss [doc. # 32] at 7-9; Petr.'s Mem. Opp'n [doc. # 63] at 9.

According to Mr. Adkins, equitable tolling "stops the clock" and allows him one year from the date on which the extraordinary circumstance ceases during which to file his application for federal (or state) habeas relief. Therefore, he argues that the one-year period did not begin to run until November 29, 2000, when he was transferred from Northern CI CDU to MacDougall CI. Mr. Adkins further contends that because he filed his state habeas petition within one-year of November 28, 2000, it was timely filed and triggered AEDPA's tolling provision in 28 U.S.C. § 2244(d)(2).

Mr. Adkins bears the burden of establishing that he is entitled to equitable (or for that matter, statutory) tolling. *See Rashid v. Mukasey*, 533 F.3d 127, 130 (2d Cir. 2008); *Diaz*, 515 F.3d at 153. To qualify for equitable tolling, Mr. Adkins must demonstrate (1) that he pursued his rights diligently and (2) that some extraordinary circumstance prevented him from timely filing his application for federal habeas relief. *See Diaz*, 515 F.3d at 153; *Valverde v. Stinson*, 224 F.3d 129,

---

[4] Respondent stated at oral argument that there is no Connecticut statutory or Practice Book requirement for a trial court judge to give a defendant who plead guilty notice of his appellate rights. Similarly, a defendant is not automatically provided with any legal materials regarding his possible rights to an appeal or to file for state habeas relief upon conclusion of his criminal case. Mr. Adkins does not dispute Respondent's representations regarding Connecticut criminal procedure.

133-34 (2d Cir. 2000). Whether a circumstance is "extraordinary" for purposes of equitable tolling is determined by inquiring "not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz*, 515 F.3d at 154. Further, in determining whether a petitioner has diligently pursued his rights, the standard is one of reasonable diligence, "not extreme diligence or exceptional diligence." *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (quotation marks omitted). Thus, a district court should ask, "[D]id the petitioner act as diligently as reasonably could have been expected *under the circumstances*?" *Id.* (emphasis in original).

Unlike the approach for which Mr. Adkins advocates, the Second Circuit has made clear that these two inquiries are interdependent, meaning that the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde*, 224 F.3d at 134. If a petitioner satisfies this two-prong inquiry, the Court may "extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Valverde*, 224 F.3d at 133 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)).

Mr. Adkins's equitable tolling argument thus raises two issues. First, has he shown that extraordinary circumstances prevented him from filing in a timely fashion? Second, did he pursue his rights diligently? The Court will consider each issue in turn. The Court will separately address Mr. Adkins's emotional trauma argument following its discussion of the other extraordinary circumstances on which Mr. Adkins relies and the issue of reasonable diligence.

1.    **Extraordinary Circumstances.** The Second Circuit has seldom found extraordinary circumstances sufficient to warrant equitable tolling. *See, e.g., Warren*, 219 F.3d at 113-14 (declining to apply equitable tolling); *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000) (same); *Smith*, 208 F.3d at 17-18 (same). In *Valverde*, the Second Circuit held that a corrections officer's intentional confiscation of a petitioner's federal habeas application and related legal papers shortly before the petitioner's filing deadline was "extraordinary" as a matter of law. *See* 224 F.3d at 133. Similarly, in *Baldayaque*, the Court explained that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances'" required for equitable tolling. *See* 338 F.3d at 152-53. The petitioner's attorney in *Baldayaque* failed to file a federal habeas application even though his client specifically requested him to do so, incorrectly informed his client that the filing period had passed, and failed to do any research on the habeas issue. *See id.* at 150-52. The Second Circuit emphasized that the attorney, in "refusing to do what was requested by his client on such a fundamental matter . . . violated a basic duty of an attorney to his client." *Id.* at 152. In both *Valverde* and *Baldayaque*, the corrections officer's actions and attorney's misrepresentations caused the petitioners to miss their filing deadlines for federal habeas relief. Finally, in *Diaz*, the Court held that an English language deficiency could constitute an "extraordinary circumstance" and that an unusual delay in a petitioner's receipt of a state appellate court's decision denying leave to appeal was an extraordinary circumstance. *See* 515 F.3d at 154-55.

As to Mr. Adkins's argument that being housed in solitary confinement, and the attendant lack of physical access to a law library, warrants equitable tolling, district courts within the Second Circuit have routinely held that such a circumstance is not "extraordinary " and is not a reason for equitable tolling. These courts reason that even if placement in solitary confinement is a severe

obstacle to pursuing legal rights, the obstacle resulted from the petitioner's own improper conduct – in this case, assaulting a DOC employee – and ordinarily is not for reasons beyond the petitioner's control. *See, e.g., Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000) (rejecting an equitable tolling argument based on petitioner's placement in solitary confinement, with resultant loss of library privileges, because the circumstances stemmed from his own misbehavior), *aff'd*, 255 F.3d 65 (2d Cir. 2001) (affirming on reasonable diligence grounds because the petitioner failed to timely file during the remaining limitations period), *cert. denied*, 70 U.S.L.W. 3774 (June 17, 2002). Moreover, given the frequency of such events as well as the DOC's discretion in maintaining an orderly prison system, "the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, [generally] do not by themselves qualify as extraordinary circumstances." *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005); *see also Hizbullahankhamon*, 255 F.3d at 75; *Tamayo v. United States*, Nos. 05 Civ. 9001 & 99 CR 1113, 2008 WL 417674, at *3 n.18 (S.D.N.Y. Feb. 13, 2008) (collecting cases); *Cross v. McGinnis*, No. 05 Civ. 504, 2006 WL 1788955, at *4 (S.D.N.Y. Jan 28, 2006) (same); *Freeman v. United States*, No. 01CV0720SJ, 2005 WL 1498289, at *3 (E.D.N.Y. June 17, 2005) (same).

Most courts also recognize that lack of knowledge and education about the law and one's legal rights is not an extraordinary circumstance because tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period. *See, e.g., Johnson v. Girdich*, No. 03 Civ. 5086, 2006 WL 473886, at *2 (S.D.N.Y. Feb. 27, 2006) ("[T]he combination of Petitioner's unfamiliarity with the law, the placement in the special housing unit, and the alleged sluggishness of the library did not rise to the level of 'confiscation' of legal

materials warranting tolling under *Valverde*."); *Lewis v. Walsh*, No. 03 Civ. 1932, 2003 WL 21729840, at *2 (S.D.N.Y. July 25, 2003) ("[A] lack of knowledge of the law is not in any way rare, extraordinary, or unusual–indeed, it is probably the rule rather than exception among prisoners."). As one district court has further stated, "pro se status and lack of expertise in the legal system do not constitute extraordinary circumstances that warrant equitable tolling. . . . To hold otherwise would give carte blanche to every . . . defendant to determine his or her own statute of limitations." *Tamayo*, 2008 WL 417674, at *3 n.19 & n.31; *Thomas v. Unger*, No. 06CV6578, 2007 WL 539039, at *2 (E.D.N.Y. Feb. 15, 2007) (collecting cases).

Finally, courts have held that a petitioner's educational level will not necessarily constitute extraordinary circumstances sufficient to warrant equitable tolling. *See, e.g., Thomas*, 2007 WL 539039, at *2 ("[P]etitioner's arguments for equitable tolling – that he was ignorant of the law and had to rely on other inmates for help, lacked education, had difficulty in obtaining court records, and receiving mail at the facility – are not 'extraordinary,' as they apply to most inmates."). According to the Second Circuit in *Diaz*, the primary inquiry for extraordinary circumstances is how "severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." 515 F.3d at 154. There, the petitioners' lack of English proficiency might have warranted tolling, but they failed to establish the due diligence necessary to satisfy the two-prong equitable tolling inquiry. *See id.* at 151, 154 ("[T]he diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency.").

Mr. Adkins acknowledged at oral argument that when viewed independently, none of the circumstances he alleges rises to the level of an "extraordinary circumstance" as defined in the case

law. However, he argues that under a totality of circumstances approach the combination of his placement in Northern CI CDU twenty-three hour lockdown and attendant lack of access to a law library, his lack of a high school education, and his lack of notice of his appellate rights collectively presents an "extraordinary circumstance" that prevented him from timely filing his federal habeas petition on June 15, 2001 (or from filing his state habeas petition by that date so as to trigger statutory tolling under 28 U.S.C. § 2244(d)(2)). Yet, there are several difficulties with Mr. Adkins's argument: first, some of the circumstances were not beyond his control; and second, even assuming these circumstances were difficult, they appear not to have prevented Mr. Adkins from pursuing his legal rights.

First, like the petitioner in *Hizbullahankhamon*, Mr. Adkins was placed in solitary confinement as a result of his own misconduct. At the evidentiary hearing, Mr. Adkins testified that he was placed in Northern CI CDU and subject to twenty-three hour lockdown conditions because of multiple disciplinary infractions that included fighting with other inmates. Captain Van Oudenhove similarly testified that Mr. Adkins was housed at Northern CI CDU because of multiple disciplinary infractions. As previous cases have noted, applying equitable tolling on the basis of a petitioner's placement in solitary confinement would only reward that petitioner with additional filing time as a result of his own misbehavior. *See, e.g., Hizbullahankhamon*, 105 F. Supp. 2d at 344; *see also Corrigan v. Barbery*, 371 F. Supp. 2d at 330. The Court does not for a minute doubt the severity of the conditions in Northern CI CDU. And in this case, the Court need not, and therefore does not, decide whether placement in solitary can ever present extraordinary circumstances. But on the facts presented here, the conditions Mr. Adkins faced were of his own making. To the Court it defies common sense, if not good judgment, to require compliant prisoners to strictly adhere to

AEDPA's one-year limitations period, yet allow disruptive and combative prisoners extra time to file habeas petitions.

Furthermore, Mr. Adkins's own testimony undermines his argument that the combination of his placement in solitary confinement, educational deficits, and lack of notice of his appellate rights prevented him from timely filing his habeas application. Mr. Adkins was placed in Northern CI CDU on February 24, 2000. *See* Resp.'s Ex. 501. Mr. Adkins's and Captain Van Oudenhove's testimony makes clear that Mr. Adkins could regularly mail and receive correspondence while in Northern's restrictive setting both before and after sentencing. And the record is clear that Mr. Adkins took advantage of the mail system to pursue his legal rights throughout this period of his placement at Northern CI CDU. As early as March 7, 2000, Mr. Adkins mailed a letter to Assistant State Attorney Michael Dearington professing his innocence to the charged crime. *See* Petr.'s Ex. 1F (letter to Mr. Dearington dated March 7, 2000). In April 2000, Mr. Adkins wrote letters to Judge Fasano and Attorney Tara Knight expressing his innocence and requesting new counsel in his criminal case. *See* Petr's Ex. 1G (letter to Judge Fasano dated April 23, 2000); Petr.'s Ex. 1I (letter to Attorney T. Knight dated April 25, 2000). In May 2000, Mr. Adkins again wrote to Judge Fasano prior to his sentencing and attempted to withdraw his guilty plea. *See* Petr.'s Ex. 1J (letter to Judge Fasano dated May 8, 2000).

Mr. Adkins also received letters while housed at Northern CI CDU. In April 2000, the Inmates' Legal Assistance Program responded to his earlier correspondence and offered him assistance in drafting papers for his criminal matter. *See* Petr.'s Ex. 1H (letter from Ellen Downing to Dennis Adkins dated April 25, 2000). Further, a letter from the Statewide Grievance Panel in June 2000 demonstrates that Mr. Adkins continued to pursue his grievance against Mr. Mandanici

16

while he was in 23-hour lockdown at Northern CI CDU.  *See* Petr.'s Ex. 1K (letter from Gerald P. Dwyer, State of Connecticut Grievance Panel, to Dennis Adkins dated June 16, 2000).  In addition, Mr. Adkins and Captain Van Oudenhove testified that Mr. Adkins could make two "legal calls" per month (in addition to his social and family calls), and Mr. Adkins testified that he used these calls to contact Mr. Mandanici in the weeks immediately following his sentencing.

Thus, it is clear that Mr. Adkins's confinement at Northern did not leave him without access to resources or completely isolated from the outside world.  In addition, the record demonstrates that Mr. Adkins's limited high school education and receipt of special education services did not impede his ability to engage in detailed correspondence, to advocate for himself, or to prevent him from filing numerous *pro se* grievances.  If he could file and pursue a grievance, the Court sees no reason why he could not file a habeas petition.  This is especially true since Mr. Adkins testified more than once that he learned that he could pursue a state habeas petition from a cell mate while housed at Northern CI CDU.

Thus, the Court concludes that the combination of factors Mr. Adkins presents – even considered collectively – does not rise to the level of an "extraordinary circumstance" that prevented Mr. Adkins from timely filing his application for habeas relief.  However, even if the Court were wrong in its conclusion, Mr. Adkins still needs to show that he diligently pursued his rights during the period that he seeks to have equitably tolled.  He has not satisfied that burden either.

2.      **Reasonable Diligence.**  At the outset, it is important to note that contrary to Mr. Adkins's argument, *see* Petr.'s Mem. Opp'n [doc. # 63] at 10-11, equitable tolling does not reset the one-year limitations period to run from the date on which the extraordinary circumstance justifying tolling ceases.  At least, that is the law in the Second Circuit.  Rather, "the tolling period must be

sufficient to permit the filing of a petition on or before the earliest date after the [extraordinary circumstance] by which that petitioner, acting with reasonable diligence, should have filed his or her petition." *Valverde*, 224 F.3d at 134. As the Second Circuit recently explained, "[r]estarting the full limitations period occurs only in situations . . . where a statute itself says that a cause of action *accrues* when the [claim] is or should have been discovered. Equitable tolling, however, does not reset the clock on a statutory limitation period; it is a doctrine that provides a plaintiff with some additional time beyond a limitations period." *Rashid*, 533 F.3d at 131 (internal citations omitted).

At oral argument, Mr. Adkins acknowledged that the Second Circuit has rejected his "stop the clock" argument; instead, the Second Circuit's approach to equitable tolling merely extends the limitations period for a reasonable period of time in recognition of the particular circumstance the petitioner encountered and the efforts he took to pursue his rights in spite of that circumstance. *See id.*; *Hizullahankhamon*, 255 F.3d at 75 ("In a case where the alleged extraordinary circumstances ceased early in the limitations period, we inquire whether the petitioner diligently pursued his application in the time remaining."); *see also Gao v. Mukasey*, 519 F.3d 376, 378 (7th Cir. 2002) (Posner, J.) ("[W]e have held that a litigant who learns, or had he been diligent would have learned, all the facts that he would need in order to be able to file his claim while time remains in the limitations period, must file it *before* the period ends."). Mr. Adkins urges this Court to disregard Second Circuit precedent as erroneous and contrary to the principles of equity and fairness. Instead, he asks the Court to adopt the Ninth Circuit's approach, which has embraced Mr. Adkins's "stop the clock" approach. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1195 (9th Cir. 2001) (en banc); *Lott v. Mueller*, 304 F.3d 918, 926-27 (9th Cir. 2002) (McKeown, J., concurring) (discussing the Ninth Circuit's decision in *Socop*). While Mr. Adkins will certainly be able to make those arguments to

the Second Circuit, unless and until that court says otherwise, this Court is bound by the Second Circuit precedent that Mr. Adkins rightly acknowledges rejects his approach.

Therefore, even where a petitioner successfully demonstrates that extraordinary circumstances existed to prevent him from timely filing his habeas application, he must still demonstrate that he pursued his rights with reasonable diligence for the "entire period he . . . seeks to toll." *Rashid*, 533 F.3d at 131; *see Baldayaque*, 338 F.3d at 150. For an ineffective assistance of counsel claim, this includes "both the period of time before the ineffectiveness of counsel was or should have been discovered and the period from that point until the [application for relief] is filed." *Rashid*, 533 F.3d at 131. Thus, a district court must consider what independent steps a petitioner took to secure relief and whether he acted diligently in doing so.

In *Morrison v. Ercole*, for example, the district court held that even where a petitioner demonstrates "extraordinary circumstances" as a result of his attorney's malfeasance or incompetence, he must still show that "he himself made reasonably diligent attempts to ensure that his petition was filed on time." No. 05-CV-5246, 2007 WL 2362206, at *6-7 (E.D.N.Y. Aug. 15, 2007). Moreover, in *McKinley v. Woods*, the district court held that equitable tolling was unavailable even where "extraordinary circumstances" of hospital admission, placement in involuntary protective custody, and confiscation of legal papers existed because "all of the aforementioned 'extraordinary circumstances' occurred before the grace period had expired" and the petitioner had thus failed to show that he acted with reasonable diligence. No. 07-CV-2467, 2007 WL 2816196, at *3 (E.D.N.Y. Sept. 26, 2007). Thus, it may be more difficult for a petitioner to demonstrate reasonable diligence sufficient to justify equitable tolling when, as here, he retains ample time after an "extraordinary circumstance" ceases during which to prepare and file his habeas application. This is so because the

Court examines the petitioner's diligence not only during the time he seeks to have equitably tolled but also during the time up to and including the date of filing. *See Rashid*, 533 F.3d at 131; *Baldayaque*, 338 F.3d at 150. Therefore, even assuming *arguendo* that Mr. Adkins faced extraordinary circumstances, the Court must still determine whether a petitioner acting with reasonable diligence would need until November 7, 2001 to file his application for federal habeas relief.

In this case, Mr. Adkins was transferred from Northern CI CDU to MacDougall CI in late November 2000, about six and one-half months before the AEDPA one-year limit was due to expire. Furthermore, Mr. Adkins testified more than once that he became aware of his state habeas rights and ability to file for state habeas relief from a cell mate with whom he was housed at Northern CI CDU. Thus, Mr. Adkins learned that he could file a state habeas petition by at least November 28, 2000, if not some months before. In addition, Mr. Adkins testified that he obtained the forms necessary to file a state habeas action by approximately April 2001, months before the AEDPA deadline expired.

Captain Van Oudenhove testified that, unlike Northern CI CDU, MacDougall CI (where Mr. Adkins was no longer under 23-hour a day lockdown) had an on-site library that contained some legal resources. In addition, he testified that inmates had the ability to request and receive additional legal materials through correspondence with outside counsel. Mr. Adkins acknowledged that he could make two legal calls from MacDougall CI per month and could make social calls every other day so long as his phone privileges were not restricted. By the time he was housed at MacDougall CI, Mr. Adkins was also aware of the Hartford County Bar Association's Lawyer Referral Service, *see* Petr.'s Ex. 1C (letter from Daniel B. Horwitch to Dennis Adkins dated February 17, 2000), and

the Inmates' Legal Assistance Program, *see* Petr.'s Ex. 1H (letter from Attorney-at-law Ellen Downing to Dennis Adkins dated April 25, 2000). Yet Mr. Adkins testified that he did not seek assistance from either of these organizations in assembling his state habeas application. In addition, Mr. Adkins testified that he had family members on which he could have relied for help but that he made a personal choice not to involve them in his challenge to his conviction and sentence.

To his credit, Mr. Adkins did reach out to several individuals to inquire about his legal rights and avenues of relief following his transfer from Northern CI CDU to MacDougall CI. For example, after his sentence was imposed, Mr. Adkins continued to file and supplement grievances against Mr. Mandanici. *See* Petr.'s Ex. 1M (letter from Frank Mandanici to Statewide Grievance Committee dated 6/21/2001); Ex. 1N (letter from Dennis Adkins to Gerald P. Dwyer dated 7/16/2001). These letters also make clear that Mr. Adkins had acquired transcripts of both his plea and sentencing hearings by mid-June 2001. *See id.* Assuming, without deciding, that it was reasonable to delay filing his habeas petition until obtaining those transcripts, Mr. Adkins had them by about the time the AEDPA deadline expired.

Furthermore, even if the Court were inclined to extend the one-year period beyond June 15, 2001, it is apparent that Mr. Adkins did not act diligently in delaying the filing of his state habeas action until November 7, 2001. Mr. Adkins had the state habeas forms in or about April 2001 and the transcripts from his state proceeding by mid-June 2001. Moreover, Mr. Adkins wrote to Gerard Smyth, Chief Public Defender, on July 3, 2001 and spoke with him by phone on August 7, 2001 concerning his application for state habeas relief. *See* Petr.'s Ex. 1R (letter from Gerard A. Smyth

to Dennis Adkins dated August 7, 2001).[5]  Mr. Adkins wrote to Mr. Smyth again on October 15,

2001 requesting information about preparing his state habeas petition, to which Mr. Smyth answered

that Mr. Adkins could attach any documentation and information that he felt relevant to his claims

but that the Connecticut Practice Book required only "the specific facts upon which each specific

claim of illegal confinement is based."  *See* Petr.'s Ex. 1U (letter from Gerard A. Smyth to Dennis

Adkins dated October 23, 2001).  Mr. Smyth also made clear that supporting documentation could

be submitted as additional evidence after Mr. Adkins filed his application for state habeas relief.  *See*

*id.*

　　Although Mr. Adkins testified that he continued to make inquiries about his legal rights and

compile his state habeas application, plea and sentencing transcripts, and other legal materials in the

period between June 15, 2001 and November 7, 2001, there is nothing to indicate that anything

prevented Mr. Adkins from timely filing his application for state habeas relief on June 15, 2001 or

soon thereafter, other than his failure to begin his inquiries while incarcerated at Northern CI CDU

and to move more quickly in gathering supporting documentation and researching his case while he

had full library access and faced less restrictive conditions at MacDougall CI.  *See Belot*, 490 F.3d

at 207-208 (holding it within the district court's discretion to deny equitable tolling where the

petitioner should have filed "an unpolished petition within the allotted time"); *Hizbullahankhamon*,

255 F.3d at 76 (rejecting equitable tolling on reasonable diligence grounds where the petitioner failed

to demonstrate that "but for those 22 days at the very beginning of the one-year limitations period

---

[5]  He also wrote to the United States Attorney's Office on July 9, 2001 requesting assistance
with a federal writ of habeas corpus.  *See* Petr.'s Ex. 1O (letter from AUSA James Glasser to Dennis
Adkins dated July 16, 2001); Ex. 1Q (letter from AUSA James Glasser to Dennis Adkins dated
August 6, 2001).  Mr. Adkins was told that he would have to exhaust his remedies in state court first.

during which petitioner was allegedly denied access to legal materials, he would have been able to file his petition within the one-year limitations period"). The Court sees no reason why Mr. Adkins needed until November 7, 2001 – almost a full year after his release from Northern CI CDU on November 28, 2000 and approximately five months after the expiration of the AEDPA limitations period on June 15, 2001 – to file his application for state habeas relief.

Thus, the Court finds that even if the combination of factors upon which Mr. Adkins relies in support of equitable tolling did constitute an "extraordinary circumstance, " he has nonetheless failed to show that he acted with reasonable diligence to pursue his habeas rights during the period spanning June 15, 2000 and November 7, 2001. Equitable tolling of the 168 days between June 15, 2000 and November 28, 2000, and a corresponding extension of the limitations period to November 7, 2001, is therefore unwarranted.

**3. Emotional Trauma.** This still leaves the issue of emotional trauma that Mr. Adkins argues justifies equitable tolling because his mental condition was both an extraordinary circumstance that prevented him from filing in a timely manner and a factor in his ability to diligently pursue his rights. Mr. Adkins seeks equitable tolling on the basis of his alleged emotional trauma from June 15, 2000 through his transfer from Northern CI CDU to MacDougall CI on November 28, 2000.[6]

---

[6] Mr. Adkins also argues that his alleged emotional trauma should equitably toll the time he spent at Walker CI CDU from April 18, 2001 to August 24, 2001 and his subsequent placement in Northern CI administrative segregation from August 24, 2001 to January 28, 2003. However, at the hearing, Mr. Adkins submitted evidence of emotional trauma principally, if not solely, for the time he was placed at Northern CI CDU in 2000. Given that the Court finds the evidence Mr. Adkins submitted insufficient to warrant equitable tolling for the 2000 Northern CI CDU period and in the absence of any record evidence of further emotional trauma during his later stays at Walker CI CDU and Northern CI in 2001-2003, the Court similarly rejects Mr. Adkins's argument for equitable tolling during these later periods.

As an initial matter, the Court notes that a showing of mental incapacity would likely satisfy the two-prong standard for equitable tolling. *See Diaz*, 515 F.3d. at 154. In addition, like other grounds for equitable tolling, cases of mental illness are analyzed under a case-by-case approach. *See Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007). However, the Second Circuit has made clear that "[e]ven with a case-specific approach, a petitioner's 'conclusory and vague claim, without a particular description of how [petitioner's] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights, is manifestly insufficient to justify any further inquiry into tolling.'" *Id.* (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) and applying it to a habeas case brought under 28 U.S.C. § 2254). Thus, equitable tolling on the basis of mental incapacity or mental illness is not appropriate unless the petitioner satisfies his burden of showing that the mental illness actually prevented him from pursuing his legal rights and timely filing his application for federal habeas relief.

In the recent case of *Bowman v. Walsh*, for example, the district court held that the petitioner had not presented the requisite evidence concerning his mental condition to justify a conclusion that equitable tolling was warranted. No. 07-CV-3586, 2007 WL 2815711, at *3 (E.D.N.Y. Sept. 25, 2007). Although the petitioner suffered from chronic schizophrenia, paranoia, and cranial trauma, he did not demonstrate that his mental illness interfered with his pursuit of his legal rights during the one-year limitations period under AEDPA. *Id.* The district court further noted that the petitioner's filing of a "post-conviction motion . . . indicates that he was, at least for a portion of the lengthy period he seeks to toll, capable of pursuing legal remedies." *Id.*

At the evidentiary hearing in this case, Mr. Adkins testified that he was "stressed out" immediately following his sentencing, where he received a thirty-five year sentence of incarceration,

as well as at times during his placement in twenty-three hour lockdown conditions.[7]  Mr. Adkins presented the testimony of Dr. Michael Greenspan, forensic psychiatry fellow at the Yale School of Medicine, in support of his argument for equitable tolling.  Dr. Greenspan testified that he met twice with Mr. Adkins in 2008 for the purpose of assessing his mental status and ability to function with respect to his legal remedies.  Dr. Greenspan noted that his assessment was limited because it consisted of a retrospective analysis of Mr. Adkins's functioning and mental health, was based on Mr. Adkins's self-reporting, and lacked psychological testing and the input of contemporaneous physicians who could give an objective account of Mr. Adkins's mental abilities during the relevant period of incarceration.

However, Dr. Greenspan noted that during their meetings, Mr. Adkins was able to converse intelligently about his incarceration and about his legal situation and the strategies that he pursued in challenging his conviction and sentence.  He noted that his review of Mr. Adkins's mental health records revealed little medical information, which made a determination of Mr. Adkins's mental condition at the relevant time period difficult.  Nevertheless, Dr. Greenspan stated that it was plausible that Mr. Adkins could have suffered from some sort of mood or adjustment disorder such as depression while housed in the CDUs and administrative segregation.  Dr. Greenspan testified that he could not answer definitively whether Mr. Adkins was capable of pursuing his legal rights during these years.  However, he did testify that a diagnosis of depression would not necessarily render an individual incapable of pursuing his legal rights and that the ability to actively advocate for oneself

---

[7]  These periods of intense confinement included Mr. Adkins's incarceration at Northern CI CDU prior to his plea and sentencing and through November 28, 2000 as well as his incarceration at Walker CI CDU and Northern CI administrative segregation, which began on April 18, 2001 and continued through January 28, 2003.

might generally counsel against a conclusion of clinical depression.[8]

As previously stated, the burden is on Mr. Adkins to show that equitable tolling is warranted. *See Rashid*, 533 F.3d at 130; *Diaz*, 515 F.3d at 153. Mr. Adkins has failed to demonstrate that any emotional trauma or other mental condition prevented him from timely filing his petition and pursuing his legal rights. To the contrary, the record shows that while from time to time, Mr. Adkins reported stress and depression, Mr. Adkins generally presented as calm, clinically stable, and asymptomatic of mood or thought disorders during his time at Northern CI CDU. *See* Petr.'s Ex. 5, at 5-12. More importantly, regardless of Mr. Adkins's mental state, he was a tireless advocate for himself throughout his confinement at Northern CI CDU, was well aware of legal resources for assistance, and engaged in detailed correspondence concerning his legal claims. *See, e.g.*, Petr.'s Exs. 1E to 1K.[9] In addition, Mr. Adkins ultimately filed his *pro se* application for state habeas relief during this time.

Therefore, the Court is unpersuaded on the basis of the record presented that Mr. Adkins's alleged emotional trauma constituted an "extraordinary circumstance" within the meaning of relevant case law or that his emotional condition adversely affected his ability to pursue his legal rights in a reasonably diligent and timely fashion. Mr. Adkins's equitable tolling argument therefore fails under both his totality of the circumstances and emotional trauma theories.

---

[8] The one entry in the record that pertains to the period spanning April 18, 2001 and January 28, 2003 generally reflects that Mr. Adkins was observed in good mental and emotional condition. *See* Petr.'s Ex. 5, at 12 (entry of John O'Reilly dated 9/9/01: "Seen at cell door . . . [Mr. Adkins] was calm and cooperative during our conversation. He denies suicidal ideation, 'I'm stressing more now.' He is eating and sleeping. He will be monitored while on in cell [restraints] and [will have follow-up] by his case manager.").

[9] The same is true of the period spanning April 18, 2001 and January 28, 2003. *See, e.g.*, Petr.'s Exs. 1M to 1Z.

**B. Statutory Tolling: November 7, 2001 to January 10, 2007**

Mr. Adkins next argues that the 1,893 days between the filing of his state habeas petition on November 7, 2001 and the Connecticut Supreme Court's denial of his late petition for certification to appeal on January 10, 2007 should be statutorily tolled under 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). This tolling provision "preserves the long-standing federal policy of requiring habeas appellants to exhaust state court remedies prior to initiating suit in federal court." *See Bennett v. Artuz*, 199 F.3d 116, 119 (2d Cir. 1999) (quotation marks omitted). Mr. Adkins's argument is premised upon the Court agreeing that the Connecticut Supreme Court's January 10, 2007 decision to permit a late-filed petition for certification retroactively tolled the entire time period between November 7, 2001 and January 10, 2007, including the period between the appellate court's denial of state habeas relief on March 29, 2005 and his *pro se* filing of his motion to late file his petition for certification on October 2, 2006. As Mr. Adkins acknowledged at oral argument, if the Court does not agree to a retroactive tolling, his petition is untimely because the time between March 29, 2005 and October 2, 2006 would not be otherwise tolled, statutorily or equitably.

At oral argument, it was apparent that the parties' positions differ widely on the issue of retroactive tolling. Respondent argues that even if the tolling provision of § 2244(d)(2) were triggered, only the period from November 7, 2001 to March 29, 2005 would be statutorily tolled. Under Respondent's analysis, Mr. Adkins's state habeas application ceased to be "pending" for purposes of § 2244(d)(2) on March 29, 2005, the date on which the appellate court denied habeas

27

relief and no petition for certification was filed. Mr. Adkins responds that the Connecticut Supreme Court's decision to grant him permission to late file his petition for certification reinstated his application for state habeas relief and thus retroactively tolled the period from March 29, 2005 to final resolution of his state habeas application by the Connecticut Supreme Court on January 10, 2007.

While *Bennett* and *Hibullahankhamon* provide some indication of the Second Circuit's position on whether Mr. Adkins's application for state habeas relief was "pending" during the entire time that Mr. Adkins seeks to have statutorily tolled, both parties agree that there is no definitive ruling in the Second Circuit on this precise issue. *Cf. Bennett*, 199 F.3d at 120 ("[A] state court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures."); *Hizbullahankhamon*, 255 F.3d at 67, 70-72 ("[T]he appeal from an initial determination on post-conviction review does not constitute a distinct application for post-conviction review in addition to the initial application. Once a court determines that the initial application was 'properly filed,' the 'properly filed' inquiry comes to an end; the only remaining question is when further appellate review of the initial application becomes unavailable."). Both parties also agree that this Term's recently-argued Supreme Court case of *Jimenez v. Quarterman*, No. 07-6984, will likely provide guidance regarding the effect of a state court's decision to entertain a late-filed application for state-court relief. In *Jimenez*, the Supreme Court granted *certiorari* to decide whether when a state court decides to reinstate a defendant's appeal, the time to seek federal habeas review under AEDPA runs from the conclusion of the reinstated proceedings.

In the absence of a definitive ruling by the Second Circuit and given that *Jimenez* will be decided this Term, the Court will assume, without deciding, that the Connecticut Supreme Court's

decision to permit Mr. Adkins's late-filed petition for certification means that the entire period of time from November 7, 2001 to January 10, 2007 is tolled under 28 U.S.C. § 2244(d)(2). The Court does so because as it has already stated, Mr. Adkins failed to satisfy his burden as to the initial period of time he seeks to have equitably tolled and, as the following discussion makes clear, Mr. Adkins has likewise failed to shoulder his burden with the final period of time he seeks to have equitably tolled.

### C. Equitable Tolling: January 10, 2007 to April 26, 2007

Lastly, Mr. Adkins argues that the 107 days between the Connecticut Supreme Court's denial of his petition for certification on January 10, 2007 and the filing of his current application for federal habeas relief on April 26, 2007 should be equitably tolled. First, Mr. Adkins argues that the district court improperly dismissed his initial application for federal habeas relief in December 2005. He claims that the district court should have stayed his case in order to allow him to exhaust his state court remedies. Alternatively, Mr. Adkins maintains that he was unable to file the instant petition immediately following exhaustion of his state court remedies on January 10, 2007 because he needed to obtain copies of his state habeas papers from his appointed counsel before filing his application for federal habeas relief.

As an initial matter, the Court rejects Mr. Adkins's argument that the district court incorrectly dismissed his initial application for federal habeas relief. *See Adkins*, 2005 WL 3543735, at *2. The Supreme Court has held that the time a habeas petition is pending in federal court is not tolled under 28 U.S.C. § 2244(d)(2). *See Duncan*, 533 U.S. at 180 ("[I]f the statute were construed so as to give applications for federal review the same tolling as applications for state collateral review, then § 2244(d)(2) would furnish little incentive for individuals to seek relief from the state courts before

29

filing federal habeas petitions."); *Zarvela v. Artuz*, 254 F.3d 374, 379 (2d Cir. 2001).

Moreover, Mr. Adkins improperly relies on the Second Circuit's case in *Zarvela* in support of his position that the district court should have stayed, rather than dismissed, his case. *Zarvela* is not relevant to this case. In *Zarvela*, the Second Circuit addressed the risks inherent in dismissal of a mixed petition for habeas relief (that is, one that contains both exhausted and unexhausted claims) and held that, as a result of the hurdles imposed by AEDPA's one-year limitations period, a stay rather than dismissal of exhausted claims "will be preferable" and is "the only appropriate course in cases . . . where an outright dismissal could jeopardize the timeliness of a collateral attack." 254 F.3d at 380.

Here, however, the district court acted properly in dismissing Mr. Adkins's application for federal habeas relief. Unlike *Zarvela*, Mr. Adkins did not present both exhausted and unexhausted claims in his 2005 application. In fact, the district court was quite clear that Mr. Adkins failed to exhaust any of his asserted grounds for federal habeas relief. *See Adkins*, 2005 WL 3543735, at *2. Thus, while the district court may have chosen to exercise its discretion to stay the case while Mr. Adkins exhausted his remedies, the court's decision to dismiss the petition was not in error and is no cause for tolling AEDPA's time limitation.

Mr. Adkins also argues that equitable tolling is appropriate because he needed to obtain copies of his state habeas paperwork before filing his application for federal habeas relief. As the Court has previously stated, Mr. Adkins must demonstrate that he acted with reasonable diligence for the entire period he seeks to have tolled. *See Rashid*, 533 F.3d at 131; *Baldayaque*, 338 F.3d at 150; *see also Belot*, 490 F.3d at 207-208 (holding the district court acted within its discretion in denying equitable tolling where the petitioner should have filed "an unpolished petition within the

allotted time"). In *Tamayo*, the petitioner sought equitable tolling in part as a result of his need to acquire documentary evidence, but the district court held that he failed to make the requisite showing of "which legal papers were missing, which of these papers were necessary to the filing of his section 2255 motion, or whether he ever received duplicate copies of these papers from any other source." 2008 WL 417674, at *4; *see also Rodriguez v. United States*, No. 06 Civ. 330, 2007 WL 998197, at *1 (S.D.N.Y. Apr. 2, 2007) (denying equitable tolling where the petitioner failed to show reasonable diligence and that the "unavailability of his legal papers prevented him from filing a timely motion"); *Lewis*, 2003 WL 21729840, at *2 ("Failure to obtain legal documents from one's state trial does not equitably toll the statutory period."). The district court concluded that the petitioner could have timely filed a bare bones petition and simply amended it later to include his supporting materials. *See Tamayo*, 2008 WL 417674, at *4.

Unlike the situation in *Valverde* where the petitioner's legal materials were intentionally confiscated by a corrections officer, Mr. Adkins's testimony makes clear that he simply lacked a copy of his state habeas materials because they were being held by his court-appointed attorney. At the evidentiary hearing, Mr. Adkins testified that he requested his state habeas file from his appointed habeas counsel and that his attorney provided Mr. Adkins those materials shortly after being asked for them. There was no intentional withholding of legal materials from Mr. Adkins. In addition, Mr. Adkins had already filed numerous habeas petitions by 2007, including a federal habeas petition. He was, therefore, well aware that he could file an application for habeas relief by stating the specific facts on which his claim rests and thereafter supplementing that application with supporting documentation. *See* Petr.'s Ex. 1U (letter from Gerard A. Smyth to Dennis Adkins dated October 23, 2001). Indeed, he had previously amended his federal habeas petition before it was dismissed

so he certainly knew how to amend a federal habeas petition. *See* Amended Petition for Writ of Habeas Corpus [doc. # 7], *Adkins v. Warden*, Docket No. 03:05-cv-1113 (SRU).

Although the Court acknowledges that Mr. Adkins needed a reasonable time after January 10, 2007 during which to file his federal habeas application, he has failed to demonstrate that he acted with reasonable diligence for the entire 107 days that he seeks to have tolled. The burden of justifying equitable tolling belongs to Mr. Adkins and he simply has not shouldered that burden. The Court sees no basis in the record for finding that Mr. Adkins acted with reasonable diligence between January 10, 2007 and April 26, 2007 and therefore the Court concludes that equitable tolling of the entire 107-day period is unwarranted.

### III.

The Court is sympathetic to Mr. Adkins's plight. He believes he is innocent and was wronged by the judicial system. Although he had several state courts review his claims of innocence and ineffective assistance of counsel, he now wants a federal court to do so. However, in enacting AEDPA, Congress concluded that achieving finality is an important goal, even if that means on occasion that an otherwise meritorious claim must go unreviewed in federal court. *Accord Calderon v. Thompson*, 523 U.S. 538, 554-55 (1998) ("In light of the profound societal costs that attend the exercise of habeas jurisdiction, we have found it necessary to impose significant limits on the discretion of federal courts to grant habeas relief. . . . These limits reflect our enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system." (citations and quotation marks omitted)). To that end, Congress placed a one-year limitation on filing federal habeas actions, subject to quite a number of statutory tolling exceptions and as the Second Circuit has held, subject to the judicially-crafted doctrine of equitable tolling.

Having carefully reviewed the record and heard from Mr. Adkins and others, the Court concludes that while Mr. Adkins's circumstances are sympathetic, they are not so extraordinary as to have prevented him from timely filing his application; nor has he shown that he acted with reasonable diligence in pursuing his legal rights. Accordingly, Mr. Adkins's Application for a Writ of Habeas Corpus [doc. # 1] is time-barred. **The Court therefore GRANTS Respondent's Renewed Motion to Dismiss [doc. # 54]. The Clerk is directed to dismiss the Application [doc. # 23] and to close this case.**

The remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, Mr. Adkins must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Adkins need not show that he would prevail on the merits, but rather that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002). However, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the Court is confident that Mr. Adkins's claims are time-barred, the *Jimenez* case may bear on his statutory tolling argument and the doctrine of equitable tolling must be decided on a case-by-case basis, and so reasonable jurists may well reach differing conclusions on the same record. Finally, tolling under AEDPA is often a complex enterprise, as this case shows. Therefore, the Court will issue a COA limited to the issues of equitable and statutory tolling under AEDPA.

**If Mr. Adkins wishes to appeal this ruling, he must file his Notice of Appeal no later**

**than 30 days from the date on which judgment is entered.** *See* **Fed. R. App. Proc. 4(a). The**

**Court directs Mr. Adkins's court-appointed attorney to file an appeal on Mr. Adkins's behalf**

**if he wishes to appeal this Court's ruling.**

IT IS SO ORDERED.

/s/         Mark R. Kravitz      
United States District Judge

**Dated at New Haven, Connecticut: November 14, 2008.**